# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

Dianah DAVIS,                    :
      Plaintiff,              :
                          :
v.                               :        Case No: 3:05cv1537 (PCD)
                          :
UNITED STATES of AMERICA and     :
Martin VEGA, JR.,                :
      Defendants.             :

## <u>RULING ON MOTION TO DISMISS</u>

Defendants move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff, Dianah Davis, filed her complaint on October 4, 2005 against Defendants United States of America and Martin Vega, Jr., the United States Postal Inspector for the United States Postal Inspection Service, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401, et. seq., alleging negligence, false arrest, abuse of process, and malicious prosecution. Plaintiff also claims, pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 397, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971), that she was falsely arrested in violation of her Fourth Amendment rights. Defendants' Motion to Dismiss [Doc. No. 20] is **granted** in part and **denied** in part.

## I.    BACKGROUND

Plaintiff is employed as a mailhandler by the United States Postal Service ("USPS"). Compl. ¶ 6. On October 23, 2002, while Plaintiff was working in the rewrap area of the Hartford Processing and Distribution Center, a white powdery substance spilled out of a piece of mail and onto Plaintiff's lap. <u>Id.</u> ¶ 7. Plaintiff reported the incident to management, but the postal police

and police inspectors were unable to conclusively determine the nature of the substance.  Id. ¶ 8.
Plaintiff asked to be sent to the hospital and reported her health and safety concerns to National
Postal Mail Handlers Union ("NPMHU") Branch 34 President, Rene Morissette.  Id.  After a
period of time had passed without any word from management advising Plaintiff about her
health, Plaintiff called the police and requested that an ambulance be sent.  Id. ¶ 9.  The next day
Plaintiff learned that the substance was not toxic in nature.  Id. ¶ 10.

On October 26, 2002 Plaintiff attempted to return to work, but was not allowed to enter
the building.  Id. ¶ 11.  A Manager of Distribution Operations informed Plaintiff that she had
been placed on emergency off-duty placement as a result of her alleged inappropriate behavior on
October 23.  Id.  The matter was referred to the Hartford Police Department and an investigation
was conducted, however, no further action was taken against Plaintiff.  Id. ¶ 12.

On November 19, 2002 a similar powder incident involving the Plaintiff occurred, after
which one of Plaintiff's supervisors suggested that Plaintiff was behind the two incidents.  Id.
Plaintiff's complaint alleges that she was arrested and required to appear in Hartford Superior
Court on numerous occasions as a result of the supervisor's remarks.  Id. ¶ 14.  The matter was
disposed of via Plaintiff's enrollment in and successful completion of the Accelerated
Rehabilitation Program.  Id.

Thereafter, Plaintiff, pursuant to the Collective Bargaining Agreement between
Defendant and the NPMHU, instituted a grievance procedure for the events relating to the
October 23 and November 19 incidents.  Id. ¶ 15.  An arbitration panel found that Plaintiff
should be compensated for any pay and/or benefits lost as a result of being placed on emergency
off-duty placement.  Id.  Defendant also conducted its own investigation in connection with a

federal grand jury indictment of Plaintiff for the November 19, 2002 incident.  Id. ¶ 17.  As part

of the investigation, Plaintiff was required to submit to a handwriting exemplar, whereby she had

to write her name over three-hundred times.  Id. ¶ 16.  The investigation resulted in a finding that

Plaintiff did nothing wrong in either incident.  Id.

      Plaintiff alleges in her complaint that Defendants "knew or should have known of the

improper intimidation tactics . . . , including but not limited to forcing [Plaintiff] to face criminal

charges."  Id. ¶ 18.  As a result, on April 25, 2005 Plaintiff filed an administrative claim with the

USPS by submitting, pursuant to 28 U.S.C. § 2671, et. seq., a Standard Form 95 for exhaustion

purposes.  Id. ¶ 19.  In a letter dated June 8, 2005, the USPS denied Plaintiff's claim on the

ground that she failed to file her claim within the mandatory two-year statute of limitations.  Id.

      Plaintiff subsequently filed a two-count complaint with this Court.  Count One of

Plaintiff's Complaint includes claims of negligence, false arrest, abuse of process and malicious

prosecution under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401, et. seq.  Id. ¶ 20. In

Count Two Plaintiff alleges, pursuant to Bivens, that Defendants violated Plaintiff's Fourth

Amendment rights by subjecting her to a false arrest.  Id. ¶ 21.

      Defendants move to dismiss Count One as to both Defendants and Count Two as to the

United States and Defendant Vega in his official capacity under Fed. R. Civ. P. 12(b)(1) for lack

of subject matter jurisdiction.  Defs' Mot. Dismiss at 3.  Defendants move to dismiss Count Two

as to Defendant Vega in his individual capacity under Fed. R. Civ. P. 12(b)(6) for failure to state

a claim for false arrest.  Id.

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving its existence.  Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). A court must accept as true all material factual allegations in the complaint, but cannot draw inferences therefrom in favor of the party asserting jurisdiction.  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).   In ruling on such a motion, a court is permitted to consider affidavits and other materials beyond the pleadings and must do so if resolution of a disputed factual issue may result in dismissal of the complaint for lack of jurisdiction.  Robinsons v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001).

### 1.      FTCA Claim against Defendant Vega

Defendants argue that Defendant Vega is not a proper party to an FTCA claim and that the claim should therefore be dismissed for lack of subject matter jurisdiction.  See Defs' Mem. Supp. Mot. Dismiss at 4.  The FTCA permits the United States to be sued for torts committed by United States employees acting within the scope of their employment.  28 U.S.C. § 2674.  The Federal Employees Liability Reform & Tort Compensation Act of 1988 ("LRA"), however, specifically limits the relief available to persons injured by government employees.  United States v. Smith, 499 U.S. 160, 161, 111 S. Ct. 1180, 113 L.Ed.2d 134 (1991).  Section 5 of the LRA states that the remedy for such injured persons against the government under the FTCA "is exclusive of any other civil action or proceeding for money damages" and that "[a]ny other civil action or proceeding for money damages . . . against the employee . . . is precluded."  28 U.S.C. § 2679(b)(1).  In United States v. Smith, the Supreme Court interpreted other provisions of the LRA to confirm that § 5 makes the FTCA the exclusive mode of recovery for the tort of a

government employee.  499 U.S. at 166-67.  Section 5 does, however, recognize two situations

where an FTCA claim against the government is not the exclusive remedy: (1) when an injured

plaintiff brings a <u>Bivens</u> claim against the government employee, seeking damages for a

constitutional violation, or (2) when an injured plaintiff brings an action under a federal statute

that authorizes recovery against a government employee.  <u>Id.</u> at 166-67 (citing 28 U.S.C. §

2679(b)(2)).

     At the time of the two "powder incidents," Defendant Vega was employed by the United

States government and was acting within the scope of his employment.  Compl. ¶ 5.  Therefore,

Defendant Vega is not a proper party to the FTCA claim.  Accordingly, Count One against him is

dismissed for lack of subject matter jurisdiction.

           2.     *FTCA Claim against United States*

     Defendants argue that Plaintiff's failure to timely file her administrative claim with the

USPS prohibits her from pursuing her FTCA claim against the United States because the United

States has not otherwise waived its sovereign immunity.  Defs' Mem. Supp. Mot. Dismiss at 5-7.

Under longstanding principles of sovereign immunity, relief may not be awarded against the

United States unless it has waived its immunity.  <u>Dep't. of Army v. Blue Fox, Inc.</u>, 525 U.S. 255,

260, 119 S. Ct. 687, 142 L.Ed.2d 718 (1999).  The extent of the waiver is delineated by the

statute consenting to the suit and "the terms of [the] consent . . . define [the] court's jurisdiction

to entertain the suit."  <u>United States v. Sherwood</u>, 312 U.S. 584, 586, 61 S. Ct. 767, 769-70, 85

L.Ed. 1058 (1941).  When the United States has waived its immunity, the scope of the waiver

must be strictly construed in favor of the United States.  <u>See</u> <u>Blue Fox</u>, 525 U.S. at 261.  The

Supreme Court has long held that "limitations and conditions upon which the Government

consents to be sued must be strictly observed and exceptions thereto are not to be implied."

Soriano v. United States, 352 U.S. 270, 276, 77 S. Ct. 269, 1 L.Ed.2d 306 (1957).

The FTCA contains a limited waiver of sovereign immunity for "claims against the United States for money damages . . . for injury or loss of property, or personal injury . . . caused by negligent or wrongful act or omission of any employee of the government while acting within the scope of . . . employment."  28 U.S.C. § 1346(b).  The Government's consent to suit under the FTCA is foreclosed unless the injured party has first presented an administrative claim to the appropriate agency which meets specific statutory requirements.  Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998).  The FTCA provides that no court can have jurisdiction over an injured plaintiff's tort claim against the Government "unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).  The FTCA exhaustion requirement is jurisdictional and cannot be waived.  Celestine v. Mount Vernon Neighborhood Health Center, 403 F.3d 76 (2d Cir. 2005).  At issue here is when Plaintiff's claims accrued for purposes of the FTCA's exhaustion requirement.

Under the FTCA the government's liability is determined by the application of the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b).  The Supreme Court has, on numerous occasions, read the FTCA to mean that the United State's liability is determined by state substantive tort law.  See United States v. Muniz, 374 U.S. 150, 153, 83 S. Ct. 1850, 1852, 10 L.Ed.2d 805 (1963); Richards v. United States, 369 U.S. 1, 6-7, 82 S. Ct. 585, 589-90, 7 L.Ed.2d 492 (1962); Rayonier Inc.v. United States, 352 U.S. 315, 318-19, 77 S. Ct. 374, 1 L.Ed.2d 354 (1957).  The standard for determining when a claim accrues for purposes of the FTCA's two-year statute of limitations, however, is governed by federal rather than state law.

Kossick v. United States, 330 F.3d 933, 935 (2d Cir. 1964), cert. denied, 379 U.S. 837, 85 S. Ct.

73, 13 L.Ed.2d 44.  Under federal law, "[c]laims under the FTCA accrue either at the time of

injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts

critical to his or her injury, whichever is earlier."  Johnson v. Smithsonian Inst., 189 F.3d 180,

189 (2d Cir. 1999) (citing United States v. Kubrick, 444 U.S. 111, 118-22, 100 S. Ct. 352, 62

L.Ed.2d 259 (1979)); Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998)).  Plaintiff

alleges negligence, abuse of process, false arrest and malicious prosecution, each of which will

be dealt with in turn.

*a.     Negligence*

Plaintiff has not argued nor demonstrated the basis of her negligence claim. The negligent

act could have been the Defendants' investigation of Plaintiff, their placing Plaintiff on

emergency off-duty status or their referral to the Hartford Police of their pursuit of a state

prosecution as well as a federal grand jury indictment.  Because it is unclear when the negligent

act occurred, this Court cannot conclusively determine when Plaintiff was aware, or should have

been aware, of the facts critical to her injury.  As all of these possible "negligent" acts occurred

after November 19, 2002, it is possible that Plaintiff's negligence claim accrued more or less than

two years before she filed her administrative claim on April 25, 2005.  Nevertheless, it is clear

that there was no need for Plaintiff to wait until her state charges were dropped for her to have

enough knowledge of the alleged negligent act to seek legal assistance.  See Kubrick, 444 U.S. at

122 (holding that a cause of action accrues under the FTCA when one is aware of the "critical

facts" of his injury and in a position to ascertain, perhaps with the assistance of counsel, whether

he has suffered a legal wrong).  Accordingly, Plaintiff's negligence claim accrued prior to May

7

2004, but some time after the second "powder incident." Due to the lack of factual specificity in and development of the record, this Court cannot find that Plaintiff failed to file her administrative claim within two years after her negligence claim accrued. This issue is better decided upon summary judgment when the factual record will be more complete.  Accordingly, Defendants' Motion to Dismiss Plaintiff's FTCA negligence claim against the United States is denied.

> b.    *Abuse of Process*

In analyzing Plaintiff's claim for abuse of process, looking to state law will help determine what injury Plaintiff is alleging to have suffered.  Under Connecticut law, "[a]buse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose." Schaefer v. OK Tool, Inc., 110 Conn. 528, 532-33 (1930).  "[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.  The purpose for which the process is used, once it is issued, is the only thing of importance."  Prosser on Torts, 5th Ed. § 121, 897.  Thus, Plaintiff's injury stems from the improper purpose for which process against her was initiated. Accordingly, under the federal accrual standard, Plaintiff's claim for abuse of process would not have accrued until she knew or should have known of any improper purpose behind any charges brought against her.  Plaintiff alleges that Defendants knew or should have known of improper intimidation tactics, including forcing Plaintiff to face groundless criminal charges, being used against Plaintiff.  Compl. ¶ 18. Furthermore, Plaintiff alleges that one of her supervisors, after the second "powder incident," suggested Plaintiff might have been involved in both incidents.  Id. ¶ 13.  Finally, Plaintiff

availed herself of the grievance procedure available to her under the Collective Bargaining

Agreement between Defendants and NPMHU.  Id. ¶15.  Taken as a whole, these facts indicate

that Plaintiff, with reasonable diligence, should have been aware of enough facts to determine

that there was a possibility that she was being prosecuted for an improper purpose no later than

the date she filed for the grievance proceeding.  Accordingly, Plaintiff's abuse of process claim

accrued and the two-year statute of limitations began to run at that point.  Based on the record as

it now stands, this Court cannot determine when Plaintiff requested a grievance proceeding and

therefore cannot determine whether Plaintiff's administrative claim was timely filed.  Again, this

issue is more properly decided on summary judgment, when the record is more fully developed.

Defendants' Motion to Dismiss Plaintiff's FTCA abuse of process claim is denied.

c.    <em>False Arrest</em>

Plaintiff's next claim is for false arrest.  Again, state law will determine the alleged

injury.  Under Connecticut law, the tort of false arrest is the unlawful restraint by one person of

the physical liberty of another.  Green v. Donroe, 186 Conn. 265, 267-68, 440 A.2d 973 (1982).

Thus, the alleged injury Plaintiff complains of is her unlawful detention.  Applying the federal

accrual standard, Plaintiff's false arrest claim accrued at the point she was detained, that being

the point at which she could reasonably be presumed to have discovered the facts of her injury.

See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) (holding that, under federal

law, false arrest claims accrue at time Plaintiff was arrested); Assegai v. Bloomfield Bd. of

Educ., 308 F.Supp.2d 65, 70 (D.Conn. 2004) (same); Wang v. United States, 2002 WL 441190,

*2 (S.D.N.Y. March 20, 2002) (same); See also Brown v. Nationsbank Corp., 188 F.3d 579, 590

(5th Cir. 1999) (holding that under the FTCA, claims for false imprisonment accrued on the dates

9

the plaintiff was detained); <u>Fisher v. United States</u>, 1992 U.S. App. LEXIS 28923 (1st Cir. 1992)(refusing to view false arrest as a continuing wrong and therefore, holding that date of the plaintiff's arrest was the date on which the statute of limitations began to run); <u>McCune v. City of Grand Rapids</u>, 842 F.2d 903, 906 (6th Cir. 1988) (holding that under federal law a cause of action for false arrest accrues on date arrest was made).  It is unclear from the Complaint when Plaintiff was detained, but it is clear that Plaintiff was arrested only for the second "powder incident."  <u>See</u> Compl. ¶ 14.  Therefore, Plaintiff's claim for false arrest accrued after the second "powder incident" on the date she was arrested and detained.  <u>See</u> <u>Singleton</u>, 632 F.2d at 191. Accordingly, as the record does not include the date of arrest and confinement, this Court cannot conclude whether Plaintiff's claim was barred by the statute of limitations.  Again, this issue is better decided on summary judgment.  Defendants' Motion to Dismiss Plaintiff's FTCA false arrest claim is denied.

d.    <i>Malicious Prosecution</i>

Plaintiff's final claim is for malicious prosecution.  Under Connecticut law, the tort of malicious prosecution is the groundless institution of criminal proceedings against the plaintiff. <u>McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447, 446 A.2d 815 (1982).  To prove malicious prosecution Plaintiff must show that: (1) the Defendants initiated or procured the institution of criminal proceedings against Plaintiff; (2) the criminal proceedings were terminated in favor of Plaintiff; (3) Defendants acted without probable cause and (4) Defendants acted with malice.  <u>Id.</u> Thus, the injury Plaintiff alleges to have suffered is the embarrassment and cost of having to face groundless criminal charges.  For FTCA accrual purposes, Plaintiff could not have known that she suffered an injury until the criminal proceedings were terminated in her favor, at which point

10

she would know, or at least have reason to know, that the criminal charges were groundless.  See

DiBlasio v. City of New York, 102 F.3d 654, 657-58 (2d Cir. 1996) (holding that a cause of

action for malicious prosecution accrues when a criminal proceeding terminates in the plaintiff's

favor); Singleton, 632 F.2d at 189 (same); Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995)

(same).  Using the date that the criminal proceedings are terminated in the plaintiff's favor as the

date of accrual avoids the possibility of conflicting determinations arising out of the same

transaction or occurrence.  See Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129

L.Ed.2d 383 (1994) (holding that requiring the date of accrual to be the date a criminal

proceeding is terminated in the plaintiff's favor precludes the possibility of the claimant

succeeding on a tort claim after having been convicted in the criminal prosecution).  The state

charges against Plaintiff were not dropped until May of 2004, giving Plaintiff until May 2006 to

file her administrative claim.  Plaintiff filed her claim with the USPS on April 25, 2005;

accordingly, her claim for malicious prosecution is not barred by the statute of limitations.

        Nevertheless, Defendants argue that because Plaintiff's administrative claim did not

mention the May 2004 date, that date should not be considered in determining whether Plaintiff

timely filed her claim with the USPS.  Reply at 5.  According to Defendants, because Plaintiff

failed to include the May 2004 date in her administrative claim, her malicious prosecution claim

is an unsubmitted and unexhausted claim, such that this court does not have jurisdiction to hear

that claim.

        The purpose of the FTCA's exhaustion requirements is to allow the government the

opportunity to investigate, evaluate and consider settlement of claims in order to ease court

congestion and avoid unnecessary litigation.  See S.Rep.No. 1327, 89th Congress, 2d Sess. 2

(1966).  A claim is properly presented to an administrative agency when it provides:

> enough information to permit the agency to conduct an investigation and to estimate the claim's worth.  A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims . . . A claimant must provide more than conclusory statements which afford the agency involved no reasonable opportunity to investigate.

Romulus v. United States, 160 F.3d 131, 132 (2d Cir. 1998).  In other words, the FTCA's presentment requirement mandates that a plaintiff must provide the appropriate federal agency with sufficient notice of his or her claim to enable the agency to investigate and a certain sum of damages to allow the agency to consider settlement.  Id.  In Johnson by Johnson v. United States, the Court of Appeals held that "by stating the cause of the injury, the name of the employee who committed the assault and the date and location of the attack," Plaintiff's claim was sufficient to allow the federal agency to investigate the claim.  788 F.2d 845, 850 (2d Cir. 1986).  Even though the claim "supplied no facts evidencing negligent supervision and did not allege all the factual elements of such a theory of liability," the Court held that a reasonably thorough investigation of the incident would have uncovered any pertinent information relating to a claim for negligent supervision.  Id.

Moreover, in State Farm Mut. Auto. Ins. Co. v. United States, the District Court held that the plaintiff's administrative claim was sufficient notice to the federal agency for purposes of the FTCA's presentment requirement.  326 F.Supp.2d 407, 413-414 (E.D.N.Y. 2004).  The plaintiff's claim alleged a motor accident caused by the negligence of the Navy's employee, injuries sustained by the plaintiff's subrogor and a request for a specific sum of damages.  Id.  Because the case did "not present a vast array of factual and legal possibilities or a vague claim by Plaintiff without any suggestion of a tort claim," the court held that the Navy had

12

sufficient notice and the plaintiff's claim was properly presented to the Navy.

Finally, in Neuenswander v. United States, the plaintiff's claim to the Veterans Administration ("VA") alleged negligence and reckless wanton failure to properly treat the plaintiff's skin condition and reported the date of injury generally, as "1998-2001." 2006 WL 722767, * 12 (D.Vt. March 22, 2006). The plaintiff's complaint, filed two years after the administrative claim, alleged that the VA had failed to treat the skin condition beginning in 1983. Id. In rejecting the government's argument that all claims prior to 1998 were not properly presented to the VA, the District Court stated that "a reasonable investigation of [Plaintiff's] claim for failure to properly treat his medical condition, which had been treated exclusively by the VA for over twenty years, would include a review of his entire medical history with the VA and thereby uncover any pertinent information," related to the plaintiff's medical malpractice claims prior to 1998. Id.

The Court finds that Plaintiff's administrative claim contained sufficient facts upon which the USPS could have investigated and had sufficient notice of a claim for malicious prosecution. Plaintiff's claim included detailed facts about the two "powder incidents," her subsequent arrest and her appearance before the Hartford Superior Court. See Compl., Exhibit A. Furthermore, she included allegations that her supervisors suggested that she was involved in the two incidents, as well as facts indicating that after she was indicted by a federal grand jury, the federal criminal offenses were dismissed. Id. The fact that Plaintiff did not specifically mention a claim for malicious prosecution is not fatal; one could have determined from the alleged facts and from a reasonable investigation that there existed the possibility of a claim for malicious prosecution. The USPS was aware not only that Plaintiff faced criminal charges initiated by

13

Defendants, but also that those criminal proceedings terminated in her favor.  The USPS also

knew that there were allegations by Plaintiff's supervisors that she was involved in the two

"powder incidents" for which she was arrested, a fact which gives rise to at least the possibility

that the criminal actions were instituted either without probable cause or for an improper

purpose.  Plaintiff gave the USPS enough notice to investigate a claim for malicious prosecution

and requested a certain amount of damages, thereby satisfying the presentment requirement of the

FTCA for that claim.

      Because the malicious prosecution claim did not accrue until May 2004 and the

administrative claim was presented on April 25, 2005, Plaintiff's malicious prosecution claim

was timely presented to the USPS.  Moreover, because her Complaint was filed within six

months after the USPS denied her claim, jurisdiction with this Court is proper.  Accordingly,

Defendants' Motion to Dismiss Plaintiff's FTCA malicious prosecution claim is hereby denied.

            3.     *Bivens Claim Against the United States*

      Plaintiff concedes that a <u>Bivens</u> action cannot be maintained against the United States.

Opp. at 5.  Accordingly, that claim is dismissed for lack of subject matter jurisdiction.

           4.     *Bivens Claim Against Defendant Vega in his Official Capacity*

      Plaintiff also seeks, pursuant to a <u>Bivens</u> theory, compensatory and other damages against

Defendant Vega for subjecting Plaintiff to a false arrest and depriving her of her Fourth

Amendment rights.  Compl. ¶ 21.  A <u>Bivens</u> action is a judicially-created remedy designed to

provide individuals with a cause of action against federal officials who have violated their

constitutional rights.  <u>Ellis v. Blum</u>, 643 F.2d 68, 84 (2d Cir. 1981); <u>see</u> <u>Bivens v. Six Unknown</u>

<u>Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 389 (1971).  The only award

available in a <u>Bivens</u> action is an award of monetary damages from the defendants in their

individual capacitites.  <u>See</u> <u>Polanco v. United States Drug Enforcement Admin.</u>, 158 F.3d 647,

652 (2d Cir. 1998).  A <u>Bivens</u> action will only lie against a federal government official; such

actions cannot be maintained against the United States or a federal agency.  <u>Mack v. United</u>

<u>States</u>, 814 F.2d 120, 122-23 (2d Cir. 1987); <u>Fed. Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471,

486, 114 S. Ct. 996, 127 L.Ed.2d 308 (1994).  "Because a claim against a federal employee in his

or her official capacity is, essentially, a suit against the United States, <u>Bivens</u> does not authorize

such claims, and the United States has not waived sovereign immunity for damages claims

arising from actions of federal employees in their official capacities."  <u>Dunn v. United States Fed.</u>

<u>Bureau of Prisons</u>, No. 3:03cv1928 (JBA), 2006 WL 695805, at *4 (D. Conn. March 20, 2006)

(citing <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994)); <u>see also</u> <u>Ige</u>

<u>v. United States Attorney's Office</u>, 104 F.3d 353, (2d Cir.1996) (affirming District Court's

dismissal of Bivens action against federal defendants named in their official capacities); <u>Pimentel</u>

<u>v. Deboo</u>, 411 F. Supp. 2d 118, 126 (D. Conn. 2006) (dismissing Bivens claims against federal

prison officials being sued in their official capacities).

    As Plaintiff has named Defendant Vega in his official capacity, Compl. ¶ 5, that action is

not cognizable under <u>Bivens</u> and therefore is dismissed.

    **B.**    **Defendants' Rule 12(b)(6) Motion for Failure to State a Claim**

    Upon a 12(b)(6) motion, the function of the court "is not to weigh the evidence that might

be presented at trial, but merely to determine whether the complaint is legally sufficient."

<u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).  In ruling on such a motion, the court

takes as true all the factual allegations in the complaint and construes them in favor of the

plaintiff.  LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).  The court considers not only the facts alleged in the complaint, but also documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  The court should not dismiss a complaint "for a failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 46, 78 S. Ct. 99, 102, 2 L.Ed.2d 80 (1957).  Importantly, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974).

        1.   *Bivens Claim Against Defendant Vega in his Individual Capacity*

Plaintiff alleges she was deprived of her Fourth Amendment rights by being subjected to a false arrest.  Compl. ¶ 21.  Plaintiff implicates Defendant Vega in the false arrest by alleging that he knew or should have known of the improper tactics being used against her, which included forcing her to face groundless criminal charges.  Id. at ¶ 18.  Defendants argue that Plaintiff's Bivens claim against Defendant Vega in his individual capacity should be dismissed because she failed to allege sufficient facts to state a cognizable claim warranting relief.  Mot. Dismiss at 9.

A plaintiff bringing a Bivens claim must show that: (1) he or she has been deprived of a constitutional right by a federal official and (2) in depriving him or her of that right, the federal official acted under color of federal law.  Mahoney v. Nat'l Org. for Women, 681 F.Supp. 129,

16

132 (D. Conn. 1987) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56, 98 S. Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978)).  There is no question that Mr. Vega was acting under color of federal law as he was, at all times, acting within the scope of his position as a United States Postal Inspector for the United States Postal Inspection Service.  Compl. ¶5.

Accordingly, the only issue is whether Mr. Vega was personally or directly involved in the alleged constitutional deprivation.  Under §1983, the "personal involvement of defendants in alleged constitutional deprivation is a prerequisite to an award of damages." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).[1]  A claim under §1983 or Bivens will not be dismissed if Plaintiff has set forth "specific and detailed factual allegations" demonstrating Defendant's personal or direct involvement in the constitutional deprivation.  Vazquez v. Parks, No. 02civ1735 (LAK) (HBP), 2003 WL 1442087, *9 (S.D.N.Y. Feb. 4, 2003) (citing, among others, Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)).  Defendant's personal involvement cannot be inferred or presumed from Plaintiff's "bald assertion[s] and conclusory terms." Id.  The Second Circuit has recognized several ways in which a plaintiff could show personal involvement: (1) the defendant may have personally participated in the infraction; (2) a supervisory official may have failed to remedy the wrong after learning of the violation; (3) a supervisory official may have created a policy or custom under which the unconstitutional practices occurred or (4) a supervisory official may have been grossly negligent in managing subordinates who caused the constitutional deprivation.  Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).  Although the Williams list is not an exclusive one, it represents the level of

---

[1] As Bivens claims are significantly similar to claims made under § 1983, federal courts generally incorporate §1983 case law into Bivens actions.  Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995).

personal involvement necessary to state a <u>Bivens</u> claim.

Claims for false arrest pursuant to §1983 or <u>Bivens</u> are governed by state substantive law. <u>Davis v. Rodriguez</u>, 364 F.3d 424, 433 (2d Cir. 2004). To prove a claim of false arrest, Connecticut law requires Plaintiff to show that Defendant Vega personally restrained her against her will. <u>LoSacco v. Young</u>, 20 Conn.App. 6, 19, 564 A.2d 610 (1989). Defendant Vega's mere knowledge of improper intimidation tactics does not rise to the requisite level of personal involvement necessary to state a claim for false arrest. Plaintiff has failed to allege that Mr. Vega was personally involved in any of the investigations of the two "powder incidents" that led to her arrest. She has not shown any specific facts demonstrating that he supervised the persons responsible for those investigations, nor has she shown that Postal Inspectors are responsible for initiating arrests or have supervisory powers to cause the arrest of a postal employee. A mere allegation of knowledge without a showing that the person possessing such knowledge is in a supervisory position in which he has the responsibility or ability to remedy the wrong is not a sufficient allegation of personal involvement to state a claim under <u>Bivens</u>. <u>See</u> <u>McCann v. Coughlin</u>, 698 F.2d 112, 125 (2d Cir.1983) (holding that prison officials were personally involved in due process violations because of their deliberate indifference to the constitutional rights of the inmates, as indicated by their knowledge that the unconstitutional practices were taking place and their failure to act upon them). Plaintiff has failed to set forth specific facts showing that Defendant Vega was personally involved in the alleged constitutional deprivation—i.e., restraining her against her will. Accordingly, Plaintiff's <u>Bivens</u> claim against Defendant Vega should be dismissed for failure to state a cognizable cause of action.

Plaintiff, however, has requested leave to amend her complaint in order to show Mr.

Vega's personal involvement in the constitutional deprivation. Pl's Opp. at 6. Generally, leave to amend should be freely given when justice so requires. <u>Gumer v. Shearson, Hammill & Co., Inc.</u>, 516 F.2d 283, 287 (2d Cir. 1974). Nevertheless, "[i]t is within the [district] court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in opposition to a motion to dismiss." <u>In re Tamoxifen Citrate Antitrust Litg.</u>, 429 F.3d 370, 404 (2d Cir. 2005). District courts may exercise their discretion to deny leave to amend "if there is a good reason for it, such as futility." <u>Jin v. Metro Life Ins. Co.</u>, 510 F.3d 84, 101 (2d Cir. 2002). An amendment is futile when the additional allegations by Plaintiff would still render a claim legally insufficient. <u>In re Tamoxifen</u>, 429 F.3d at 404. Here, if Defendants are correct in their argument that Plaintiff cannot allege any facts sufficient to state a claim for false arrest or malicious prosecution against Mr. Vega, then Plaintiff's attempt to include additional facts detailing his involvement in the false arrest or malicious prosecution would be futile and the leave to amend should be denied.

Plaintiff, even if granted leave to amend her complaint, cannot allege sufficient facts to state a claim for false arrest against Defendant Vega. Specifically, she cannot prove that Defendant Vega restrained her physical liberty against her will. <u>LoSacco</u>, 20 Conn.App. at 19. Plaintiff has alleged that Defendant Vega had knowledge or should have had knowledge of improper tactics being used against Plaintiff, including forcing her to face groundless criminal charges. Compl. ¶ 18. Plaintiff has also alleged that the first "powder incident" was referred to the Hartford Police Department, but no further action was taken against her and that when she was arrested for the second "powder incident" she was placed in the Accelerated Pretrial Rehabilitation Program by the Hartford Superior Court. <u>Id.</u> at ¶ 12-14. The only "restraint"

19

Plaintiff alleges is placement in the rehabilitation program and that was done by the court, not by Mr. Vega or anyone at the USPS. Therefore, even if Plaintiff could amend her complaint to show that Mr. Vega's knowledge of the improper intimidation tactics was sufficient to constitute personal involvement, she could not show any set of facts that would be sufficient to state a claim for false arrest under Connecticut law.

Nevertheless, based on the fact that Plaintiff alleges Defendant Vega knew or should have known she was forced to face groundless criminal charges, her complaint is construed as including a claim for malicious prosecution. Like claims for false arrest, <u>Bivens</u> claims for malicious prosecution are governed by state substantive law. <u>Davis</u>, 364 F.3d at 433. To prove malicious prosecution, Plaintiff must prove that: (1) Defendant initiated or procured the institution of criminal proceedings against Plaintiff; (2) the criminal proceedings have terminated in favor of Plaintiff; (3) Defendant acted without probable cause and (4) Defendant acted with malice. <u>McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447, 446 A.2d 815 (1982). The distinction between false arrest and malicious prosecution claims has been described as follows:

> If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized . . . [h]e is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution upon proof of malice and want of probable cause, as well as termination of the proceeding in favor of the plaintiff. . . . [W]here the defendant has attempted to comply with legal requirements, and has failed to do so through no fault of his own, false imprisonment will not lie, and the remedy is malicious prosecution.

W. Prosser, Torts (4th Ed.) § 11.

Because the absence of probable cause is an essential element of a malicious prosecution claim, <u>see</u> <u>Hartman v. Moore</u>, No., 04-1495, 547 U.S. ___, slip op. at 15 (2006), Defendants argue that the federal grand jury indictment returned against Plaintiff gives rise to a presumption

of probable cause that destroys her malicious prosecution claim.  See Reply at 6.  Although it is

true that the existence of a facially valid indictment affords assurance that the charges brought

against the defendant were based upon probable cause, State v. Riggs, 7 Conn. App. 180, 185,

508 A.2d 67 (1986), it is equally true that this is only a presumption.  The Supreme Court has

recently held that a showing of "a retaliatory motive on the part of an official urging prosecution

combined with an absence of probable cause supporting the prosecutor's decision to go forward

are reasonable grounds to suspend the presumption of regularity behind the charging decision."

Hartman, 547 U.S. ___, slip op. at 14. Because the prosecuting officer at the grand jury

indictment has broad discretion over what evidence to present and because Plaintiff was not

allowed to be present at the grand jury indictment, there always exists the strong possibility that

evidence showing the absence of probable cause was omitted.  Therefore, it cannot conclusively

be said that there are no set of facts Plaintiff could present which could show the absence of

probable cause to arrest her.

Defendants further argue that Plaintiff has failed to show that Defendant Vega initiated or

procured the institution of proceedings against her, nor has she shown that Mr. Vega acted with

malice.  See Reply at 7-8.  Although the allegations in the Complaint are too vague to conclude

that Plaintiff has stated a cognizable malicious prosecution claim, there is no indication that if

Plaintiff were to amend her complaint to include more specific factual allegations demonstrating

Defendant Vega's personal involvement in the alleged deprivation, she could not prove these

elements and state a cognizable malicious prosecution claim.[2]  Accordingly, Defendants' motion

---

[2]     In order to prove a constitutional malicious prosecution claim, Plaintiff must plead and prove not
only the absence of probable cause, but also that Defendant Vega acted maliciously and "induced
the prosecutor to bring charges that would not have been initiated without his urging." Hartman,
547 U.S. ___, slip op. at 11-12; 15.

to dismiss Plaintiff's <u>Bivens</u> claim against Defendant Vega in his individual capacity is granted. However, Plaintiff is granted leave to amend her complaint to set forth more facts demonstrating Mr. Vega's personal involvement in her alleged constitutional deprivation in order to state a cognizable malicious prosecution claim.  It is noted that Plaintiff is granted leave to amend only for the purpose of setting forth a malicious prosecution claim against Defendant Vega in his individual capacity.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 20] Plaintiff's FTCA claims against Defendant Vega is **granted**.  Defendants' Motion to Dismiss Plaintiff's FTCA claims against the United States, however, is **denied**.  Defendants' Motion to Dismiss Plaintiff's <u>Bivens</u> claims against the United States and Defendant Vega is **granted**, however, this Court will allow Plaintiff to file an amended complaint, in accordance with the terms set forth herein, on or before May 11, 2006.  If Plaintiff fails to file her amended complaint on or before May 11, 2006, Plaintiff's malicious prosecution claim under <u>Bivens</u> shall be dismissed.

SO ORDERED.

Dated at New Haven, Connecticut, April  27 , 2006.

_____
/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut